Felix L. **CARWILE,**
Petitioner–Appellant,

v.

Steve **SMITH,** Warden, et al.,
Respondents–Appellees.

No. 88–5920.

United States Court of Appeals,
Sixth Circuit.

Argued March 31, 1989.

Decided May 15, 1989.

As Amended on Denial of Rehearing
June 26, 1989.

J. David Niehaus, Public Defender (argued), Louisville, Ky., for petitioner-appellant.

John Gillig (argued), and Elizabeth Marshall, Asst. Attys. Gen., Office of the Atty. Gen., Frankfort, Ky., for respondents-appellees.

Before MERRITT and NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

The question posed in this habeas corpus case is whether the Due Process Clause of the United States Constitution was violated by the refusal of a Kentucky trial judge to let a criminal defendant withdraw a guilty plea after the judge had rejected a sentencing recommendation made by the prosecutor pursuant to a plea bargain. A majority of states do not give the trial judge discretion to disallow withdrawal of a guilty plea in these circumstances; the practice in Kentucky is different. Because the criminal defendant in the present case was not misled about the possibility that the sentencing recommendation might be rejected, and because he had the option of refusing to plead guilty unless his plea could be conditioned on the court's acceptance of the prosecutor's recommendation, we conclude, as did the federal district court in which the habeas case was brought, that there was no violation of the United States Constitution.

I

The petitioner, Felix Carwile, was indicted in Kentucky state court on 14 counts of rape, sodomy, attempted rape, and sexual abuse. The victims were petitioner's minor grandchildren. After negotiations with petitioner's lawyer, the prosecutor agreed to drop two of the counts and agreed that if petitioner would plead guilty to the other 12 counts, the prosecutor would recommend concurrent sentences not exceeding 20 years in toto.

On May 14, 1986, a plea hearing was held before a Kentucky state trial judge. Petitioner entered guilty pleas to two counts of the indictment, and pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), he pleaded guilty to the remaining counts with a protestation of innocence. The trial judge gave petitioner a full explanation of his rights, satisfying himself that petitioner understood those rights. A transcript of the hearing also includes these questions and answers, among others:

> "THE COURT: Do you understand the court may order the sentences on each count to run concurrently meaning at the same time or consecutively one after the other?
>
> [MR.] CARWILE: Yes, sir.
>
> \*   \*   \*   \*   \*   \*
>
> THE COURT: Have any threats been made to you or any promises or assurances been made to you by anyone that if you plead guilty the court will go easy on you, probate your sentence or otherwise give you special treatment?
>
> MR. CARWILE: No, sir.
>
> \*   \*   \*   \*   \*   \*
>
> THE COURT: Knowing that you have all the rights which I have described to you is it still your desire to waive or give up those rights by entering a plea of guilty to the charges and allow me to fix your punishment within the range permitted by law from twenty years to life in the penitentiary?
>
> MR. CARWILE: Yes, sir."

At the sentencing, which was held on June 24, 1986, the trial court rejected the Commonwealth's recommendation of concurrent sentences and ordered that petitioner's sentences be served consecutively. The sentences imposed by the court totaled 190 years. Petitioner moved to withdraw his guilty pleas, and the motion was denied. The Supreme Court of Kentucky affirmed the judgment, *Carwile v. Commonwealth,* No. 86–SC–855–MR (Ky. Feb. 12, 1987), and the United States Supreme Court denied certiorari. *Carwile v. Kentucky,* 482 U.S. 917, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987).

Petitioner then sought a writ of habeas corpus in the United States District Court, alleging that "[i]t is a denial of due process of law for a trial judge to impose a harsher sentence than that agreed upon in a guilty plea case without offering the defendant an

opportunity to withdraw the plea." The district court referred the matter to a magistrate, who found that petitioner had been fully apprised by the trial court of the potential consequences of his actions, including the possibility that the court might impose consecutive sentences. Hence, the magistrate concluded, the trial judge's decision not to let petitioner withdraw his guilty plea did not constitute a denial of due process. Adopting the report and recommendation of the magistrate, the district court denied habeas relief. The present appeal followed.

## II

Rule 8.10 of the Kentucky Rules of Criminal Procedure provides that "At any time before judgment the court may permit the plea of guilty or guilty but mentally ill to be withdrawn and a plea of not guilty substituted." In *Couch v. Commonwealth*, 528 S.W.2d 712 (Ky.1975), the Kentucky Supreme Court interpreted this rule as giving a trial court discretion to refuse to permit the withdrawal of a guilty plea following the court's rejection of an agreed sentencing recommendation, as long as the record showed that the defendant was not misled by promises of leniency by the trial court.

The same circumstances that existed in *Couch* exist here. As in *Couch*, the trial judge asked petitioner if he understood that the court could impose a higher sentence than the one recommended. As in *Couch*, petitioner answered in the affirmative. As in *Couch*, the trial judge asked petitioner if anyone had promised him leniency in return for pleading guilty; the answer, as in *Couch*, was negative.

Petitioner's attorney obviously understood the possibility that the court might reject the recommended sentence; at the sentencing hearing defense counsel "encourage[d] the Court to follow the recommendation of the Commonwealth in this case." No such "encouragement" would have been necessary had counsel believed that acceptance of the prosecutor's recommendation would be automatic.

Petitioner claims that he comes within the exception to *Couch* because he was led to believe that as long as the mothers of the victims agreed with the recommended sentence, the trial judge would adopt it. His affidavit states:

"At the plea, Judge McAnulty asked the mothers of the children if they agreed with the disposition. They did say that they would go along with the agreed sentence. When I heard Judge McAnulty say before that he would go along with the judgment of the prosecutor in making the offer, I thought he was saying that he would accept the plea as written on the plea sheet and would give me that sentence. He told me he did not have to take the recommendation and that he could give me any sentence that he thought was right. But I also thought that even though he did not have to accept the plea, he already had when he asked the mothers if they would agree to the sentence....

... I figured that the judge was telling me things that he had to under the law but I also figured that he would go along with the plea bargain."

We cannot read petitioner's mind, and we do not know whether he had an actual belief, as opposed to a mere hope, that the judge would follow the prosecutor's recommendation. Any such subjective belief would have to be disregarded, however, if the record as a whole shows no objective basis for the belief—and the record before us, as we read it, does not contain any substantial basis for a person in petitioner's position concluding that the trial court was foreclosing itself from rejecting the agreed sentencing recommendation.

It is true that the trial judge asked one of the mothers of the victims if she was in agreement with the recommendation, to which she responded "yes." At no point in the plea hearing, however, did the judge say that he would be bound by anyone else's views. On the contrary, the judge clearly had misgivings about the deal the prosecution had worked out: "To be very very candid," he said, "it makes me ill."

Nor did the mothers of the victims deliver a ringing endorsement of the sentencing recommendation. One of them said:

> "MS. CARWILE: ... Well, you know if it's in the best interest of him getting maybe life and a day that is really what I want. You know, I could go through with it but you know if it means he could pull the straight 20 no parole you know I'm all for this too. I just you know want to spare them as much as possible, but I know, you know, he will go for parole in say four years or less, he will be eligible for it. God willing he won't get it cause I wish he could suffer the pain they went through...."

In light of these observations, and in light of the court's questions to petitioner as to whether he understood that the sentences could run consecutively—"one after the other"—and could extend up to "life in the penitentiary," it is difficult to understand how it could be thought that petitioner was "misled" into thinking that the judge would be bound by the prosecutor's recommendation. Given the standard of *Couch*, it is hardly surprising that the Kentucky Supreme Court should have concluded that the denial of petitioner's motion to withdraw his guilty plea was not an abuse of discretion.

Petitioner objects to the *Couch* standard itself, however, saying that it violates fundamental norms of constitutional due process. He notes that under federal law, as well as under the law of 40 out of 49 states,\* a criminal defendant who has pleaded guilty must be given an opportunity to withdraw his plea when an agreed sentencing recommendation is rejected by the sentencing court. But while this fact may be of interest to Kentucky courts and legislators, it is not controlling as far as our constitutional inquiry is concerned. The question to be answered in determining the constitutionality of a state rule of criminal procedure is not whether the rule is out of step with the prevailing trend, but rather whether it violates the "fundamen-

tal elements of fairness." *Spencer v. Texas*, 385 U.S. 554, 563–564, 87 S.Ct. 648, 653–654, 17 L.Ed.2d 606 (1967). And "[a]s Mr. Justice Cardozo had occasion to remark, a state rule of law 'does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at bar.'" *Id.* at 564, 87 S.Ct. at 654.

In *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970), the Supreme Court gave us guidance as to when a guilty plea is "fundamentally fair":

> "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).'" (Citation omitted.)

None of the circumstances forbidden by *Brady* was present here. Petitioner has not accused the prosecutor of any threats or improper, bribe-like promises. He has alleged that the court and the prosecutor misrepresented to him that he would be allowed to serve his sentences concurrently, but the facts do not provide any objective support for this allegation. A mere subjective expectation of leniency is not enough. "[T]here is a critical difference between an entitlement and a mere hope or expectation that the trial court will follow the prosecutor's recommendation." *Mabry v. Johnson*, 467 U.S. 504, 507 n. 5, 104 S.Ct. 2543, 2546 n. 5, 81 L.Ed.2d 437 (1984).

Petitioner argues that regardless of what the trial judge actually said, the plea agreement carried an implication that the suggested sentencing recommendation

---

\* The nine exceptions are Arkansas, Delaware, Hawaii, Kansas, Kentucky, Mississippi, Nebraska, Rhode Island, and Wisconsin. The State of

Washington does not allow plea bargains. See *Carwile v. Commonwealth, supra,* slip op. appendix at 34.

would be accepted. The Supreme Court rejected a similar argument in *Mabry v. Johnson, supra,* and we are not prepared to accept such an argument here.

Counsel for petitioner was on notice that under Kentucky law the trial court was not bound to accept the Commonwealth's sentencing recommendation and was not bound to permit a withdrawal of the guilty plea if the recommendation should be rejected. Petitioner could have sought to condition his guilty plea on retention of the right to withdraw the plea upon rejection of the recommendation. We do not know whether a conditional plea would have been approved here, but there has been no showing that petitioner made any effort to put that question to the test. And we do know, just as petitioner knew, that he remained free to plead not guilty if he could not get the kind of plea agreement he wanted. Against that background, we see nothing fundamentally unfair in what happened.

The judgment of the district court is AFFIRMED.